The Honorable, the United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may give their attendance and they shall be heard. God save the United States of America and this Honorable Court. Court is in session. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is United States v. Byron Allen Cardozo, Appeal No. 201318 and Appeal No. 201398. Attorney Terrio, please introduce yourself for the record and then proceed with your argument. Good morning, Your Honors. May it please the Court? Good morning. Good morning. Marie Terrio, on behalf of Byron Cardozo, may I please have two minutes rebuttal if necessary? Yes. Thank you. Uh, Your Honors, there are two issues before the Court today and the two issues involve the sentence imposed and restitution. Counsel, counsel, excuse me, is restitution properly before the Court? Has there ever been an amended judgment entered in the District Court? No, Your Honor. Then how is that issue before us? Your Honor, this issue may not be before you and this issue became more and more complicated through briefing. The government brought the issue to the Court's attention, their brief, that in fact there was no judgment amended. Do you agree with the proposition that if there is no judgment embodying the restitution order that we have no jurisdiction to hear an appeal from it? I do, Your Honor. So that issue isn't before us and at the time, if and when a judgment is emptied, you'll have to take another appeal. Yes, Your Honor. Counsel, let me ask you this. I mean, this issue's been out there for a while. Why hasn't someone sought to have the District Court enter a judgment? Is it because someone feels that the District Court doesn't have jurisdiction because it's on appeal? You know, I'm not sure, Your Honor, because it would be the government's responsibility to seek an amended judgment. It is not Mr. Cardozo's responsibility. Thus, I'm not sure if I can answer that question. In all honesty, when I did miss that point. Okay, we'll ask the government. Thank you, Your Honor. If I may briefly focus on my sentencing issue, on behalf of Mr. Cardozo, we are asking this Court to vacate his sentence and to remand the matter for resentencing. Why? Well, first of all, a 70-month sentence of imprisonment is clearly a sentence greater than necessary to accomplish the goals of sentencing. The sentencing record below, in my opinion, is void of any analysis, any reasons as to why the Court chose to impose the maximum penalty on Count 1, charging cyberstalking, Count 2, a consecutive sentence of 10 months of imprisonment, Count 2 being interstate threats. Your Honor, the government describes... Counsel, the total sentence is mid-range, mid-guideline range, isn't it? Yes, Your Honor, except the guidelines are merely advisory. And counsel... Believe me, we understand that, and I think the district court did too. Given the pattern of behavior here, where your client has repeatedly resisted lawful efforts to keep him away from these Jane Doe's, why isn't a mid-range sentence perfectly appropriate? First of all, Your Honor, trial counsel argued... Four minutes remaining. Trial counsel argued below that the criminal history category in this state, in this case, was grossly overstated. The history, Mr. Cardozo's is decades of mental health issues, substance abuse issues, and just obviously extreme mental health issues. Attempted suicide on four occasions. It's criminal history points, Your Honor. One of the criminal history points is attributed when he was restrained in a hospital bed when they were attempting to commit him pursuant to the Florida Baker Act, and I believe he may have spit at the police officer in an orderly. Furthermore... Counsel, excuse me. You haven't appealed the guideline range on the basis that the district court computed an incorrect criminal history score. So the district court was entitled to treat the criminal history score and the criminal history category as it was unless it accepted counsel's argument that there was a gross overstatement, which it obviously didn't. Your Honor, at sentencing and in a pre-sentencing memorandum, counsel for Mr. Cardozo argued to the court that a more appropriate criminal history would be somewhere between a category four or a category five based upon the grossly overstated criminal history. But the court didn't accept that argument. Well, we don't know. Obviously, the court didn't accept it. But we do know, counsel, because the court acknowledged having read the pre-sentencing filings. The court acknowledged reading the defendant's sentencing memo, the defendant's supplemental memo, the government's memo. So it acknowledged having digested everything that was being argued. Yes, Your Honor, that is all the court stated at sentencing. The trial judge acknowledged that she had reviewed all of these documents. The government asked for a sentence of 63 months in this case. The government thought that was for a lower sentence. Furthermore, if I could briefly touch upon the totality of circumstances in this case. Mr. Cardozo was sentenced to prison in December of 2019. We do know from the sentencing transcript that the trial judge recommended that he participate in the Bureau of Prisons' residential drug awareness program and that upon his release, he be released to the state of Florida so that he would have the support of his parents. As of January, February, March of 2020, we entered into a global pandemic. Mr. Cardozo has been in a lockdown. Mr. Cardozo was in lockdown for over a year. So the only thing we can glean from the sentencing transcript is that the trial judge sentenced Mr. Cardozo to an extremely high sentence, but she wanted him to participate in this program that would have potentially afforded him a year off of his sentence administratively. Counsel, let me ask you a question. If there had been no pandemic and the Bureau of Prisons had not accepted the trial judge's recommendation, you would have had no recourse. So why is this any different? I mean a recommendation isn't a condition. But it is all we know from the from the sentencing transcript. We have no reasoning whatsoever. The sentencing factors, the only details or insight we can gather from the trial judge is that she was and his substance abuse issues and that he would engage in this program. And instead we went into a global pandemic. So I'm asking this court to amend this matter to vacate his sentence because it is far greater than necessary to accomplish the goals of sentencing and allow the trial judge to re-sentence Mr. Cardozo. Thank you. Thank you, counselor. Thank you, Attorney Terrio. At this time, would Attorney Eisenstadt please unmute your audio and video? And if you could introduce yourself on the record to begin. Karen Eisenstadt for the government. I'd like to start, unless the panel has a different preference, with the restitution issue. So it seems like the parties are now in agreement that issue is not properly before this court because the restitution appeal is premature. There is no amended judgment. Judge Thompson had asked why the government did not ask the court to or move the court to enter the amended judgment. I just want to briefly respond to that. So there's nothing in the record right now on that point. There's no request that I see on the docket that the government did make. But contrary to what the defendant has been arguing and raised for the first time in his reply brief, I don't believe the government has an obligation to ask the court to enter an amended judgment that the court itself indicated that it would enter after deciding the restitution issue. I think the government has an interest in ensuring that eventually an amended judgment is entered because my understanding is the clerk's office will not ever disperse funds to a victim without the amended judgment. And thus the government does have an interest in the matter, but there's no obligation in terms of moving at any particular time for an amended judgment. But whether or not there's an obligation, counsel, don't you think the government has some responsibility to assist the courts in their efficient operation? Hi, if I could, please, please pause. Judge Hawkins, I'm afraid the headphones you introduced are actually causing some problems. We have to unplug those. It was a good idea, Judge, but I think unfortunately it made it worse. Okay, go ahead. I'm sorry. So Judge Selle had just asked a question regarding whether the government has some responsibility. And in this case, what happened is after the district court entered the restitution order, just a few months later, the defendant had filed his opening brief in this court, purportedly bring the restitution order before this court. And at that point, at least from my view, it was wiser for the government not to try to alter the status quo until this court had spoken as to whether it thought it did have jurisdiction, didn't have jurisdiction. So as not to move things along and confuse matters at that point, since there was if the court dismisses the appeal or issues a limited remand for the amended judgment to be entered at that time, it may make sense for the government to communicate with the district court on that matter. But at this point, because the issue appeared to be potentially before this court, the government did not make any motion in the district court. Do you know why the district court never entered an amended judgment? It's not on the record and I don't have any insight into whether that was just an oversight or if there was something in the clerk's office. There, it's potentially possible that the fact that there was the pending sentencing appeal raised some concerns about whether, you know, jurisdiction had been divested and there should, you know, the district court should wait. So I don't actually know why that did not occur. You do have some responsibility, counsel, don't you, to the victims of this individual's behavior? I mean, Jane Doe 1 expended significant funds hiring lawyers, getting restraining orders, that sort of thing. And I just find it curious as a former prosecutor myself, why you didn't earlier get this into the judgment. Because you are absolutely correct, that can't be enforced until there's some amendment to the judgment. Right. No, you're absolutely right. In terms of enforcing the order, an amended judgment would be necessary. And from that perspective, the government has an interest and a responsibility to make sure that does eventually occur. But as I understand it, there's no claim that there's any collection action or disbursement action going on right now. I was sort of hoping that your response to my comment would be, we're sorry. Yes, well, I don't have insight into why that didn't occur. So I don't want to make any... It doesn't matter why. But yes. Counsel, it doesn't matter why. This is part of your job. Did you try the case? I did not. No, I didn't handle the case. One of your colleagues in the US Attorney's Office did, correct? One of my colleagues here and one, I believe, in DOJ, but the colleague here who handled the case is actually no longer with this office. So... It is always amazing to me, and I don't mean to be picking on you, but it's amazing to me that people don't seem to be able to use the telephone. Because a colleague left doesn't mean you can't call to get some information or call the person who's now taken over responsibility for the case at the trial level. And it's not just you. I mean, this happens a lot when people are arguing on appeal. They just don't talk to one another and it's just odd. But go ahead. If the panel doesn't have further questions on the restitution issue, I can turn briefly to sentencing. Four minutes remaining. So as to sentencing, defense counsel claimed that the record is void of any reasons for the judge imposing the mid-range guideline sentence that she imposed. And that's not correct. It's pretty clear from the record what happened. Here, the defendant engaged in an 18-month unrelenting campaign of threats, harassment, cyber-stalking against this victim. And as Judge Hawkins pointed out, in doing so showed blatant disregard for the law. And there was a pattern of behavior with respect to the other Jane Does, as explained in the PSR. And the defendant here did argue for purportedly mitigating factors. But it was clear none of them were persuasive and that the court was not persuaded by them. And I think it's apparent from the court's response to defense counsel's argument that the court's view was that he had. Well, the court said your task today was not an easy one, given the circumstances of this case. So I commend you. And there's not a lawyer that could have received a better result in here today than the sentence I'm about to impose. And I think it's clear from this, the court heard everything that defense counsel argued. And as this court said in the Lozada Aponte case, which I think Judge Hawkins authored, that the court didn't separately respond to each persuasive argument that defense counsel made suggests that those arguments were unconvincing, not ignored. And I think that's exactly what happens here. And furthermore, in terms of substantive unreasonableness, because the sentencing rationale is plausible, and the result, which was a mid-range guideline sentence, is completely defensible. There is no basis to vacate for resentencing here. Counsel, the court did make the statement about no attorney could have done any better than you're doing here. But that doesn't really give an explanation as to why the court is imposing the sentence that it imposed. And I know that our case law says that we can infer based upon the filings. And here we did have the filings. We had victim impact statements. But it's concerning that more wasn't said specifically about why that was not greater than necessary. So as the Supreme Court pointed out in Rita, and I think applies here, it's certainly true the district court could have said more at the point of imposing sentence. But here we are on plain error review because there was no objection made that, you know, I don't understand why you're the district court was thinking was along the lines of what the district court in Rita had been thinking that, you know, understanding that the commission's view that a guideline sentence in this type of situation is appropriate for a typical offender, and then finding that there's no compelling mitigating circumstances to make this defendant any different from that, which would explain then the guideline sentence. So I think because this is on plain error review, and you can discern from the record what the rationale was, there is no basis to vacate the sentence. Counselor, you say this is on plain error review, but that's not true of the claim of substance and reasonableness. That's correct. It requires a showing of a plausible sentencing rationale, and the same lack of specification that constitutes the claim of no explanation also informs the claim of no plausible sentencing rationale, because it's hard to tell from this record what the district court sentencing rationale was. I think it is apparent in this case what the district court reacted to those arguments. So I think it's clear that mitigation arguments were made, but they were not persuasive. The government decisively undercut three of them. The claim of overstated criminal history didn't really make sense, because the idea that he repeatedly violated probation actually tended to show that this behavior with Jane Doe 1 was consistent with the pattern of disregarding the law, and that in this case, he again didn't stop his behavior when there was, even though he was under community control, even though there was a civil protection order. Unless the court has any further questions, thank you. Thank you, Counselor. I'm surprised, Counsel, that you didn't point to the extensive oral presentation of Jane Doe 1, which is a catalog of the reasons supporting the sentence. I'll leave it at that. Thank you. Please introduce yourself back on the record to begin. Marie Theriault, on behalf of Byron Cardozo. Rebuttal, please. Yes. Your Honors, first and foremost, I'm very concerned about how this restitution issue, uh, how this court will revamp this case, because Mr. Cardozo, he is indigent. I am a CGA panel attorney on his behalf, but I do not represent him in the lower court. So Mr. Cardozo will object to the government attempting to amend the judgment at this point in time. So I just want the record to be clear that I am concerned about his rights in the lower court, if proceedings begin again in the lower court, because he does not have an attorney below. Secondly, Your Honors, I would ask this court to please consider the 2020 United States Supreme Court... Counsel, one second. Did he have a CJA attorney below? No, Your Honor. He did not. Who represented him below? Private Counsel John Calcagni. I mean, I will, you know, communicate with Mr. Calcagni about my concerns regarding Mr. Cardozo's rights. And if I may, counsel for the government indicated that this court must review the that on February 26th of 2020, I believe it was Justice Breyer in Poliquin-Hernandez v. United States, Slip Opinion No. 18-7739, made it clear that under the federal rules, I believe it is Rule... I apologize. Excuse me. Rule 51, that as long as counsel informs the court, for example, in a pre-sentencing memorandum... That's time. Go ahead. Please finish. Thank you. There is no waiver. The issue is preserved for appeal regarding a sentence. Thank you very much.  Thank you, Your Honors. That concludes argument in this case. Attorney Theriault and Attorney Eisenstadt, you should disconnect from the hearing at this time.